IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

CHAILA RENEE SCOTT,
313 BEAUPE DRIVE
LULING, LA 70070
Plaintiff

Case No. 22-1401

SECT. E MAG. 1

-vs-

COMPLAINT

COLLEGIATE ACADEMIES
2625 THALIA STREET
NEW ORLEANS, LA 70113

STEVEN ROSENTHAL
1421 SONIAT STREET
NEW ORLEANS, LA 70115

STACY MARTIN
5751 EASTOVER DRIVE
NEW ORLEANS, LA 70128
Defendant(s)

## COMPLAINT

### JURISDICTION

1. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

2. This court has personal jurisdiction over the defendant corporation because the corporation's principal place of business is located in this state.

3. Venue is proper pursuant to 28 U.S.C. 1391(b)(1) because the events giving rise to the allegations in this complaint occurred in this district.

4. The district courts shall have original jurisdiction of all civil actions where the matter. In the controversy exceeds the sum or value of $75,000.

### PARTIES

1. The Defendants are Collegiate Academies (2625 Thalia Street New Orleans, LA 70113), Steven Rosenthal (1421 Soniat Street New Orleans, LA 70115) and Stacy Martin (5751 Eastover Drive New Orleans, LA 70128)

TENDERED FOR FILING

MAY 18 2022

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

1

COMPLAINT

Factual Allegations

1. On August 29th 2021, Hurricane Ida hit landfall and operations at Collegiate Academies ceased until 9/13/2021.

2. Plaintiff was unable to return to work on 9/13/2021 due to severe damage sustained at her domicile.

3. On 9/12/2021 Plaintiff communicated with Erin LaBostrie (Human Resources) via email who explained that Plaintiff's leave request was updated to reflect the dates of 9/13/2021-9/17/2021.

4. On same date, Plaintiff disclosed to Erin LaBostrie that she was not fully functioning and apologized for the mistakes made on the previous Ida Discretionary Leave Request Form.

5. Fully paid leave beyond 5 days was offered to individuals working on the Central Office level with Child Care/Dependent Needs only. Everyone else was instructed to use their PTO for additional time.

6. Plaintiff sent an email to Margo Bouchie (Chief of Schools) on 9/14/2021 inquiring about the policy that shows preferential treatment to those with child care issues due to Hurricane Ida over people with other hurricane related issues such as homelessness and was told that Discretionary leave would start 9/20/2021 so that employees wouldn't need to use their PTO and that once the PTO was exhausted that she, Human Resources, and direct supervisor would "work individually with [plaintiff] to find a solution".

7. On 9/24/2021 Plaintiff was informed by Erin LaBostrie that her discretionary leave expired 9/24/2021 and that she would have to use PTO or unpaid leave if she still could not return to work.

8. On 10/04/2021 Plaintiff was contacted via text by Stacy Martin (Interim CEO) who inquired about Plaintiff's FEMA case and stated that everyone she knows who rented has gotten money from FEMA.

9. On 10/06/2021 Plaintiff was contacted by Frederick Johnson IV (Senior Director of CA Next) to inform her that Erin LaBostrie told him to tell her that she had 8 hours of PTO left, that she will have to use PTO for 10/04/2021, and would be on unpaid leave from 10/05/2021 to 10/07/2021 prior to Fall Break and that donating PTO (although done in the past for employees) would not be possible for her.

10. There was no evidence of a review being preformed upon PTO exhaustion according to organizational policy and the Plaintiff was not contacted directly by Margo Bouchie, Erin LaBostrie, or Frederick Johnson, IV as promised by Bouchie in her prior email once Plaintiff's PTO was exhausted.

11. Plaintiff felt her mental health declining and in an act to be proactive about preserving her mental health she reached out to Mary C. Braud, DNP (Mental Health Nurse Practitioner) on 10/07/2021 Plaintiff reached out to to inquire about mental health leave and an appointment was scheduled for 11/03/2021

12. On 10/12/2021, Plaintiff was contacted by Frederick Johnson, IV at 7:09 am (outside of normal working hours) to ask Plaintiff if she would still be off the current week. Plaintiff confirmed that she was out that week. Johnson encouraged Plaintiff to send a letter to the team about being out in which Plaintiff responded that she was not in the headspace to give updates at the time and that she was trying to figure out how to supplement the income she no longer had.

13. On same day, after being informed that the Plaintiff was experiencing mental health issues, Johnson continued to push for a brief message and/or for Plaintiff to review a message to be sent on her behalf by him. Johnson also mentioned only a part time option for income after being informed that Plaintiff's mental health was not in optimal condition.

2

14. In the text thread, Plaintiff stated that she could start back the following week but also stated her thoughts and feelings about her pay being cut without proper protocol or notice given and that she felt like she meant nothing to Collegiate. Plaintiff also spoke with Johnson via text about the toxic work environment she has been experiencing and that she felt like she was being pushed out of her position for speaking her mind.

15. On 10/12/2021 Plaintiff was sent the Unpaid Leave Form to complete via text message by Frederick Johnson, IV.

16. On 10/13/2021 Plaintiff was contacted again by Frederick Johnson, IV asking her to backdate the Unpaid Leave form. Plaintiff replied that she didn't feel comfortable backdating any information and that the form was not given to her to complete in a reasonable amount of time.

17. Within the same conversation, Johnson disclosed that these were his directives from Erin LaBostrie and he didn't know there was an unpaid leave form and that he would have sent the form had he known.

18. Johnson also disclosed that he was getting information on Mental Health Leave and that LaBostrie informed him that FMLA was also an option, none of which were formally presented as options to the Plaintiff at the time, only as ideas and possible solutions.

19. Plaintiff informed Johnson that she planned to take mental health leave and that it was not originally offered to her as an option (in-spite of her prior omission to LaBostrie that she was not fully functioning).

20. Johnson also informed Plaintiff that the unpaid leave request that she refused to backdate was already processed. Again, Plaintiff informed Johnson that she was in mental stress.

21. Following the text conversation, Plaintiff experienced a severe anxiety attack in which she went to the Ochsner Main Campus Emergency Department located at 1516 Jefferson Highway for immediate treatment.

22. Upon arrival, Plaintiff's initial blood pressure recording was 224/109.

23. While at the hospital, when asked what the cause of the attack was Plaintiff cited that she felt constantly contacted and harassed (by her Direct Supervisor-Frederick Johnson, IV and Human Resources-Erin LaBostrie) while on leave and extremely overwhelmed.

24. Plaintiff also considered voluntary admission into an In-Patient Mental Health Facility during her hospital visit and received paperwork in which to admit herself.

25. Also on 10/13/2021, Plaintiff attempted to contact her Primary Care Physician, Dominique M Anwar, MD to schedule an ER follow up visit and discuss Mental Health Leave Authorization. She was informed that the next available appointment was 11/06/2021.

26. Plaintiff was able to obtain an appointment with Dr. Addy Reine, MD on 10/18/2021 for ER follow up and Mental Health Leave authorization

27. On 10/14/2021 Plaintiff performed work duties as requested by Frederick Johnson, IV while still on unpaid leave.

28. On 10/15/2021 Plaintiff performed work duties as requested by Frederick Johnson, IV while still on unpaid leave.

29. On 10/18/2021 Plaintiff requested the short term disability form from Erin LaBostrie because it was never offered to her. Also cc'ed on this email was Frederick Johnson IV, Lauren Katz (Chief of Staff), and Plaintiff's personal email. The form was received from LaBostrie within the same day of request.

30. Also on 10/18/2021, Plaintiff attended her appointment with Dr. Addy Reine and started the paperwork process to obtain Short Term Disability and FMLA.

431. On 10/19/2021 Plaintiff performed work duties as requested by Frederick Johnson, IV while still on unpaid leave.

31. On 10/20/2021 Plaintiff submitted Worker's Compensations Information to Erin LaBostrie.

32. Also on 10/20/2021 Plaintiff was informed that her FMLA request was approved for the dates of 8/29/21 to 11/14/21. Plaintiff maintains that these dates are incorrect and should have been approved for 10/13/2021 to 12/12/2021 because the date of the incident that required Mental Health leave began on 10/13/2021 as indicated by the Plaintiff's Emergency Room visit.

33. On 10/20/2021 Plaintiff performed work duties as requested by Frederick Johnson, IV while still on unpaid leave.

34. On 11/02/2021 Plaintiff requested that all correspondence be sent via email in a particular thread titled: Check-In + HR Updates in an attempt to preserve her dwindling mental health condition and described the process of obtaining Mental Health Leave as painfully emotionally taxing.

35. Also on the same day, Frederick Johnson, IV replied to Plaintiff's request by stating that he will call her the following day at 12pm after being asked twice to contact her via email only.

36. On 11/03/2021, Plaintiff received a meeting invitation from Johnson via Google Calendar to check in at 12 pm on the same day. Plaintiff informed Johnson as she had multiple times prior that she was not emotionally prepared for a phone call and asked him to defer to the email thread that was designated for communication.

37. On 11/07/2021 Plaintiff contacted Mary C. Braud DNP via the Ochsner portal to inquire about extending her leave because she was not ready to return to work.

38. On 11/08/2021 Plaintiff contacted Addy N. Reine, MD to indicate that Braud did not know much about leave and was waiting for her practicing partner to get back with more information. Plaintiff also asked Dr. Reine if she could change the dates on the paperwork to reflect the correct date of 10/13/2021 as the day of incident and not 8/29/2021 as the entire organization was on leave from 8/29/2021 to 9/13/2021. Dr. Reine informed Plaintiff that the dates could not be changed.

39. Although the entire organization was out due to Hurricane Ida, the date of 8/29/2021 was still applied and recorded as the date of incident by HR as the start of leave for the Plaintiff. When the Plaintiff asked HR to adjust the dates, it was stated that she could not change the dates of the attending physician (although inaccurate).

40. On 11/08/2021, Plaintiff asked for proof of her reconsideration process which was indicated in the policy process for individuals requesting more time on leave who did not require Child Care/Dependent accommodations.

41. On 11/14/2021 Johnson contacted the Plaintiff to set up a meeting, Plaintiff asked him to email her first and indicated that she was documenting all communications for her records. On the same day Johnson followed up with Plaintiff and asked if it was still okay to call (after being told multiple times to communicate through email only) in which Plaintiff declined the call and asked that email be used for all communication moving forward.

42. Plaintiff did not receive information to extend her leave or leave extension letter to provide employer nor did she receive clearance to return to work from Mary C. Braud, DNP and was forced to resign from Collegiate Academies on 11/15/2021.

Count 1: Violation of ADA (42 U.S.C. § 12101)

43. In accordance with paragraphs 1-43 Plaintiff was never offered the proper process for Mental Health Leave although often indicating that her Mental health was declining to both her Direct Supervisor and Human Resources at Collegiate Academies.

44.     Plaintiff was still expected to perform work duties while on leave and did so under duress in fear of losing her job on specific dates mentioned above in previous paragraphs.

45.     Plaintiff was constantly contacted and felt harassed by Collegiate Academy staff, namely Frederick Johnson, IV and Erin LaBostrie either for having lack of information that should have been known by both mention parties through subject knowledge of position and/or still being contacted to attempt to set up phone meetings after asking several times that email be the main and only form of communication.

46.     The gross mishandling and flippant dismissal of Plaintiff's requests and/or questions regarding the fair treatment of her leave case following Hurricane Ida which further contributed to the decline of Plaintiff's mental health condition and mental and emotional distress.

DEMAND

The Plaintiff seeks compensatory damages as a result of her sustained ongoing emotional distress as evidenced by her aforementioned Emergency room hospital visit resulting in a state of dangerously high blood pressure, triggered and ongoing anxiety attacks, performing work duties on leave, and the overall company culture contributing to the fragility of Plaintiff's state of mind and well being. Plaintiff asks that this case be heard and tried in the United States District Court Eastern District of Louisiana.

Dated: 5/18/2022

Chaila Renee Scott
313 Beaupre Drive
Luling, LA, 70070
(504) 351-5798

5